**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 16-cr-10133-PBS** |
| | ) | |
| **BARRY DAVIS** | ) | |

**DEFENDANT'S MOTION FOR RELIEF FROM MISJOINDER AND/OR SEVERANCE OF COUNTS**

Defendant Barry Davis respectfully moves, pursuant to Fed. R. Crim. P. 8(a) and 14(a), for severance of the counts added in the Superseding Indictment ("SI") and for a separate trial on the counts relating to each of the added victims. As grounds, he states as follows:

The original indictment against Mr. Davis was returned on May 11, 2016. D.E. 1. It alleged sex trafficking by force, fraud or coercion (18 U.S.C. § 1591) against two adult victims, occurring in August, 2015, in Massachusetts and Connecticut (Counts 1&3). Companion transportation counts (18 U.S.C. § 2421) were alleged as to each victim (Counts 2&4). He does not seek severance of these counts.

In September, 2016, the government returned a Superseding Indictment ("SI"), D.E. 32, adding the following charges:

- sex trafficking and transportation of an adult victim, occurring between September, 2001, and September, 2002, in Massachusetts and Connecticut (Counts 5&6);[1]
- sex trafficking of a minor victim, occurring between March and June of 2003, exclusively in Massachusetts (Count 7);[2] and

[1] Mr. Davis argues, by separate motion, that the allegations in Counts 5&6 are barred by the statute of limitations in effect at the time of the alleged offense. *See* 18 U.S.C. § 3282(a) (setting forth a 5-year statute of limitations for non-capital offenses).

[2] Mr. Davis also argues, by separate motion, that Count 7 must be dismissed because his federal

- sex trafficking and transportation of an adult victim, occurring in April, 2015, in Massachusetts and New Jersey (Counts 8&9).

Mr. Davis argues below that Counts 5-9 were improperly joined and should be severed and tried separately as follows: Counts 1-4 to be tried together; Counts 5&6, if not dismissed, to be tried together; Count 7, if not dismissed, to be tried alone; and Counts 8&9 to be tried together.

## I. THE COUNTS ARE NOT PROPERLY JOINED

Fed. R. Crim. P. 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged -- whether felonies or misdemeanors or both -- are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

In the ordinary case, the basis for joinder under Rule 8 "should be discernible from the face of the indictment." *United States v. Natanel*, 938 F. 2d 302, 306 (1st Cir. 1991). The remedy for misjoinder is severance. *Id.*

### A. Same or Similar Character

Rule 8(a)'s provision for joinder of offenses that are of the "same or similar character" is controversial. The First Circuit has questioned why Congress would have provided for joinder of offenses that have the "same or similar character," noting that the "same or similar" language was "drawn from earlier law without explanation," and that "about the best one can say is that in such cases the evidence of one crime is more likely to be independently admissible, on theories reflected in Fed. R. Evid. 404(b)[.]" *United States v. Randazzo,* 80 F.3d 623, 628, n.1 (1st Cir. 1996). The Second Circuit has observed that the "customary justifications for joinder (efficiency and economy) largely disappear" when "all that can be said of two offenses is that they are of the 'same or similar character." *United States v. Halper,* 590 F.2d 422, 430 (2d Cir. 1978).

---

prosecution violates the Double Jeopardy clause.

> [T]he only time likely saved by joinder of "same or similar character" offenses is the time spent selecting a jury ... On the whole, however, the "trials" on the joined charges are distinct. At the same time, the risk to the defendant in such circumstances is considerable.

*Id.*

Counts 5-9 were improperly joined under this provision. While they charge the same *kind* of conduct, the alleged victims joined in the SI are factually unrelated to each other and to the offenses alleged in Counts 1-4. Counts 5 and 6 allege conduct occurring fourteen years before the events alleged in Counts 1-4. Count 7 occurred twelve years before Counts 1-4 and in Massachusetts only. Counts 8 and 9 occurred the same year as Counts 1-4 but in Massachusetts and New Jersey. Nothing in either of the indictments, nor in the discovery provided to date, suggests any factual overlap between the two victims in Counts 1-4 and the three victims added in the SI – that they knew each other, that they crossed paths, or that there would be fact witnesses in common. To the contrary, the offenses appear to be not only temporally and geographically separated, but to be entirely factually unconnected. *Cf. United States v. Chambers*, 964 F.2d 1250, 1250–51 (1st Cir. 1992) (joinder of multiple bank robbery counts was proper under Rule 8(a) where each one involved a robbery of a federally insured bank, occurred *in a "short period*, between May 1 and July 14, 1989," and *in a "limited area*, the greater Boston area" (emphasis added)).

The rationale for joinder based solely on the "same or similar character" of the offenses is tenuous at best. *See United States v. Perry*, 37 F. Supp. 3d 546, 557 (D. Mass. 2014) (Casper, J.) ("[T]he 'same or similar character' standard for joinder has been described as the 'lower end of the range' for joinder where the line between proper joinder and misjoinder may be closest"); *Randazzo,* 80 F.3d at 627-28 & n.1 ("It is obvious why Congress provided for joinder of counts that grow out of related transactions—ones that are 'connected' or 'part of a common scheme or plan'; the reason for allowing joinder of offenses having 'the same or similar character' is less clear"); *Halper,* 590 F.2d at 430 ("When all that can be said of two separate offenses is that they are of the 'same or similar

character,' the customary justifications for joinder (efficiency and economy) largely disappear"). For this reason, the "same or similar" provision "must be narrowly applied to situations where permitting joinder will not lead to the sort of prejudice addressed in Rule 404(b) of the Federal Rules of Evidence." *United States v. Buchanan,* 930 F. Supp. 657, 665 (D. Mass. 1996); *cf. United States v. Varoudakis*, 233 F.3d 113, 123 (1st Cir. 2000) (noting, in the admissibility context, that the more similar a prior bad act, the more likely it is to be deemed relevant under 404(b), yet the more likely it is that the jury will impermissibly use it to infer that a defendant who committed the prior bad act would be likely to commit the crime charged). As discussed further in section II, below, the joinder of Counts 5-9 is highly prejudicial, as they share nothing with the crimes charged in Counts 1-4 except the kind of offense. The category should be interpreted "narrowly" to exclude just this scenario.

**B. Same Act or Transaction**

Rule 8(a) also permits joinder if the allegations share common facts. *Randazzo,* 80 F.3d at 628. Courts have looked to whether "the same evidence would be admissible in both trials if the counts were severed." *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004) (no plain error in failing to sever pipe bomb and drug conspiracy charges where indictment charged use of pipe bomb in furtherance of the drug conspiracy). "In determining whether counts are properly joined, this court considers such factors as 'whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred.'" *United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996) (quoting *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)).[3]

[3] Cases considering Rule 8(b), which governs the joinder of defendants, are instructive. Rule 8(b) allows joinder if defendants are found to have engaged in the "same act or transaction, or in the same series of acts and transactions." As one court observed in ordering relief from misjoinder under 8(b) in a multi-defendant indictment alleging two distinct conspiracies:

Here, again, the allegations in Counts 5-9 are temporally, geographically, and factually unrelated to the allegations in the original indictment. Counts 5, 6, and 7 occurred over a decade before Counts 1-4. Counts 8 and 9 allegedly took place in 2015, temporally closer to the events in Counts 1-4, but in Massachusetts and New Jersey. There is no suggestion that the offenses added in the SI are in any way connected to the offenses in the original indictment (or to each other), as in a larger conspiracy. *Cf. United States v. Lynn*, 856 F.2d 430, 436 (1st Cir. 1988) (asking whether, under related test for admitting evidence showing a "common plan or scheme," a prior drug transaction "lead[] in a progression" to the one at issue, and noting further that "[a]ny non-propensity thread is attenuated by the fact that the previous crime took place six years before and involved different participants").

**C. Common Scheme or Plan**

Joinder is proper under the rubric of a "common scheme or plan" if one illegal activity provided the motive and necessity for another illegal activity. *See United States v. Dominguez*, 226 F.3d 1235, 1239 (11th Cir. 2000) (mortgage fraud and drug charges properly joined, where defendant submitted fraudulent income tax returns when applying for mortgage loans in order to conceal that his income was derived from drug sales). Joinder of counts that are not sufficiently "connected" may require reversal. *See United States v. Litwok,* 678 F.3d 208, 216 (2d Cir. 2012) (reversing defendant's convictions for mail fraud and tax fraud).

The counts added in the SI, separated by over a decade from the conduct originally indicted

---

> Of course, in the broadest sense, both conspiracies are part of the same series of acts or transactions constituting offenses -- just as the 1995 World Series was part of the same series of acts or transactions that began with Abner Doubleday. But, as this example demonstrates, Rule 8(b) cannot possibly be read so broadly if it is to have any practical meaning.

*United States v. Kouzmine,* 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996). "If the factual matrices of the alleged facts are different, there is no series and hence no joinder." *United States v. Turkette,* F. 2d 896, 908 (1st Cir. 1980), *reversed on other grounds,* 452 U.S. 576 (1981).

and geographically by several states, do not form a common scheme or plan with Counts 1-4 or with each other. They are unconnected in fact. Mr. Davis is not charged with a pattern of activity or with a conspiracy; he is simply charged with disparate acts in violation of the same two statutes.

In sum: the counts in the SI could only conceivably be joined under the "same or similar character" provision. Yet because they are entirely factually unconnected, and temporally and geographically attenuated, joinder under that provision does not apply.

## II. THE VICTIMS ADDED IN THE SI SHOULD BE SEVERED TO AVOID THE UNDUE PREJUDICE THAT WOULD RESULT FROM A JOINT TRIAL

Even if offenses are properly joined, Rule 14(a) authorizes severance if the joinder of offenses causes prejudice. Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."); *see also Fenton*, 367 F.3d at 21-22. The First Circuit has stated that "Rule 8(a)'s joinder provision is generously construed in favor of joinder, [citations omitted], in part because Fed. R. Crim. P. 14 provides a separate layer of protection where it is most needed." *Randazzo*, 80 F.3d at 627. To obtain a severance of joined counts, a defendant must make a strong and convincing showing of prejudice. *United States v. Richardson,* 515 F.3d 74, 81 (1st Cir.2008), *cert. denied*, 553 U.S. 107 (2008). Three types of prejudice may result from trying a defendant for several offenses during the same trial:

> "(1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither."

*Id.* (quoting *United States v. Jordan*, 112 F.3d 14, 16 (1st Cir. 1997)).

Here, the danger of the second type of prejudice is high. The allegations of sex trafficking

of other victims are both inflammatory and very similar. The combination creates a high likelihood that, rather than determining guilt or innocence as to each victim under the relevant standard of law, a prejudicial spillover will occur whereby the jury hears evidence about one victim, decides that Mr. Davis is the kind of person who commits these offenses, and then uses evidence from the first to convict as to the second, and from the second to the third, and so forth. *See Varoudakis*, 233 F.3d at 123 (noting the danger of improper spillover increasing in direct proportion to the similarity of the prior bad acts); *United States v. Beechum,* 582 F.2d 898, 915 n.20 (5th Cir. 1978) (same).

Here, it is unlikely that evidence of the 2001-2 and 2003 victims would be admissible in a severed trial as to the 2015 victims and vice versa. It is also unlikely that evidence of the April, 2015 allegations in Counts 8&9 would be admissible in a trial on Counts 1-4 or vice versa because, although the conduct is from the same year, it is factually unrelated and geographically distinct.

Rule 404(b) would govern the admissibility determination. Under Rule 404(b), prior bad act evidence is strictly inadmissible to "encourage the inference that because the defendant committed a crime [] before, he is the type of person to commit the crime currently charged." *Lynn*, 856 F.2d at 434. The evidence may be offered for a non-propensity purpose, such as knowledge, motive, intent, or lack of accident, subject to balancing under Rule 403. FRE 404(b); *Lynn*, 856 F.2d at 436-37; *United States v. Flores Perez*, 849 F.2d 1, 4 (1st Cir. 1988). This is referred to as "'special' relevance." *United States v. Landry*, 631 F.3d 597, 602 (1st Cir. 2011). The government would have to offer a theory of relevancy for the extrinsic allegations that did not have "an inference of propensity as 'a necessary link in the inferential chain.'" *Varoudakis*, 233 F.3d at 120. It would need to "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence." *United States v. Zimmerman,* 943 F.2d 1204, 1212 (10th Cir. 1991) (internal quotation marks and citations omitted) (emphasis omitted). A "broad statement merely" offering the evidence to show "'knowledge and intent,'" for instance, would be "clearly insufficient." *Id.*

Furthermore, the fact of consequence toward which the extrinsic evidence is offered must actually be at issue in the case. In *United States v. Sanders*, for instance, a defendant was accused of stabbing a fellow inmate. 964 F.2d 295, 298-99 (4th Cir. 1992). Where his defense was self-defense, "the only factual issue in the case was whether [self-defense] was the reason for the admitted [stabbing]." *Id.* at 298. Thus, the district court erred when it admitted evidence that the defendant had, a year earlier, committed an assault against another inmate because "[t]he fact that Sanders had committed an assault on another prisoner and possessed contraband one year earlier had nothing to do with his reason for—his intent in—stabbing [the victim]." *Id.* at 298-99. In *Flores Perez*, a defendant in a firearms trafficking case argued that he did not know what was inside the briefcase he was carrying. The First Circuit reversed the district court's admission of evidence of a prior gun possession charge, reasoning that "[w]hether or not Flores had prior experience with guns could do little to help the jury decide whether Flores knew the briefcase contained guns." 849 F.2d at 7; *cf. Landry*, 631 F.3d at 602-04 (in a prosecution for fraudulent use of someone else's social security number, evidence of defendant's prior recitation of a different social security number, during at a traffic stop, was admissible because her defense was "innocent involvement" – that she had given the fraudulent social security number accidentally).

Here, the anticipated defense as to the adult victims is that even if there was prostitution, there was no coercion. Motive is not expected to be in issue; nor is identity. The only conceivable relevancy for evidence of factually unconnected but highly similar allegations about other victims is that if Mr. Davis coerced others into prostitution, it is more likely that he coerced this victim into prostitution. That line of logic is forbidden: it has "an inference of propensity as 'a necessary link in the inferential chain.'" *Varoudakis*, 233 F.3d at 120.

Furthermore, even if the government *could* articulate a non-propensity purpose for offering evidence of other victims, if the trials were severed, the probative value of the evidence would be

substantially outweighed by the danger of unfair prejudice. *See* FRE 403; *Landry*, 631 F.3d at 602. The allegations that Mr. Davis trafficked other women, over the course of two decades, are of the most highly prejudicial, inflammatory sort: "undeniably explosive" evidence of a "shocking or heinous crime likely to inflame the jury." *Varoudakis*, 233 F.3d at 122 (reversing introduction, in arson prosecution, of evidence of an earlier arson); *see also id.* at 120 (describing the risk of the "motive label being used to smuggle forbidden evidence of propensity to the jury" and contrasting a situation where a prior act could legitimately be introduced to show motive). Furthermore, probative value is relative to the availability of other evidence to prove the same point. Where the government has other evidence to prove a fact in issue, the introduction of controversial evidence to prove the same point is disfavored. *See Lynn*, 856 F.2d at 436-37.

In sum, the First Circuit has noted, the fact that the allegations against other victims are very similar brings out the danger that the jury will use them as propensity evidence. The shocking nature of the allegations compounds that problem. Because the allegations appear to be entirely factually unrelated, there is very little non-propensity basis for introducing the evidence. *See Landry*, 631 F.3d at 602 ("[t]o determine whether proffered evidence has special relevance, the court considers the temporal relationship of the other act and the degree of similarity to the charged crime"). This case thus presents the perfect storm of a tenuous basis for joinder, highly inflammatory allegations, and an almost inevitable propensity inference, which together threaten to overwhelm Mr. Davis' right to a fair trial. Justice, in this case, requires severance.

## CONCLUSION

For the above reasons, the Court should sever the counts added in the SI.

Respectfully submitted,
BARRY DAVIS
By his attorneys

*/s/ Jane Peachy*
Jane Peachy
B.B.O. #661394

*/s/ Cara McNamara*
Cara McNamara
AK Bar #0511088

*/s/ Amy Barsky*
Amy Barsky
Cal. Bar #270846

Federal Defender Office
51 Sleeper St., Fifth Floor
Boston, MA 02210
Tel: 617-223-8061

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 13, 2017.

*/s/ Jane Peachy*